CHAUVIN *v.* JOHNSON.

4-4525

Opinion delivered February 8, 1937.

*Cotton & Murray,* for appellants.

*J. M. Shinn,* for appellee.

BAKER, J. Horace G. Chauvin died in Boone county, October 11, 1934. Immediately thereafter C. V. Wagley filed in probate court an instrument purporting to be his will. Julia Chauvin and Charles B. Chauvin filed in probate court objections to the probate of this instrument. Without notice to Anna Maude Johnson, who was named in the instrument as one of the devisees, the court held that the instrument should not be admitted to probate, and shortly thereafter Mrs. Anna Maude Johnson appealed to the circuit court. In that court the cause was tried without the intervention of a jury. The circuit court held that the instrument was properly proved as the last will and testament of Horace G. Chauvin, and that it should be admitted to probate, and by order directed that the matter be certified to the probate court with directions to proceed in accordance with the order and judgment so made. It is from this judgment of the circuit court that the appeal has been prayed that we now have under consideration.

The petition and exceptions of Julia Chauvin and Charles B. Chauvin, filed in the probate court, recited the following substantial matters:

That Julia Chauvin was a sister and Charles B. Chauvin was a nephew of the said Horace G. Chauvin, deceased; that the instrument of writing purporting to be his will should not be admitted to probate for the reason that it has been materially altered and modified since it was signed and attested; that said alterations were not attested; that the instrument was composed of two typewritten sheets and interlineations in ink; that the said interlineations were made in the instrument subsequent to the date of its execution, and that they change

the purport and meaning of the instrument as originally written.

They further say that the will is regular and legal in form; that the provision of said instrument in favor of Mrs. Maude Johnson was procured through undue influence on her part; that the instrument should be declared void and of no effect.

There were no amendments to these objections and exceptions to the purported will. There was no proof presented or abstracted here upon this appeal as tending to show the exercise of any influence on the part of Mrs. Johnson or that her conduct in any manner, as presented on this appeal, was subject in respect to suspicion or criticism. That purported issue will not be discussed.

A fair statement of the matters presented would obviate the necessity of any great detail in the presentation of the testimony of the witnesses.

Horace G. Chauvin had a house and lot or home in Harrison, perhaps, two or three hundred dollars worth of personal property. He was living alone in this property, perhaps, some years prior to his death. His wife and only child had predeceased him. One of his aunts had lived with him for a time, but she had died. During several years immediately prior to the death of the testator, there is no showing of any intimate relationships or bestowal of kindnesses or attention on the part of the appellants, nor is there, in fact, any evidence that they very often visited the testator. However, Mrs. Johnson, the appellee, had been kind to him, waited upon the sick ones in his home and bestowed attention upon the testator in his illness, and particularly that which caused his death. She went with him to Little Rock when he entered the hospital, remained with him after he had had an operation and waited upon him, and during this period, immediately after the operation, he gave to her a key, advising her that it was the key to a safety or lockbox in the post office, and that if anything happened to him, he desired that she give the key to Mr. Wagley at the post office. It appears from the evidence that some time, perhaps a year or two prior to the death of Chauvin, he had asked Wagley to prepare for him a will requesting

that it contain certain provisions, and that in certain paragraphs of it blank spaces be left wherein he could write or fill in matters as he wished. Wagley prepared this instrument, and a short time later it was duly signed in the presence of witnesses who were told that it was his will, and who signed at his request, in his presence and in the presence of each other. The witnesses say that it was so folded that they were unable to observe whether it was typewritten or partially in typewriting and partially written with pen and ink. However, they did identify the instrument by the signatures as the one they had so executed. No witness testified who had seen the face of the instrument after the typewritten copy was delivered by Wagley to Chauvin. It was found in the lockbox at the post office where Chauvin had worked for a long time as janitor.

We think the only conclusion that could have been reached by the court was that Chauvin desired to make a will. He did not wish that the provisions of it should be known to any one except himself. He had that in mind when he asked that blank spaces be left in it in which he could write. He wrote into it what he desired to say, and then it was so folded witnesses who signed at his request could not observe the contents. It was then locked in the box at the post office. He had the key to that box. It is not shown that anybody else could enter that box. No one else ever had the key except Mrs. Johnson who delivered it to Mr. Wagley. No one could have had any particular interest in the will except the three parties involved in this suit, so far as this record discloses, and even if there had been a desire on the part of any one to tamper with, to change or modify the instrument in any way the opportunity was not afforded to do so. It was established that the writing in the face of the will was in the handwriting of the testator, so the court was thoroughly well justified in concluding that the instrument was the will of Chauvin.

The only matter for consideration in regard to the execution of the will arises out of the following matters which were set forth by appellants and which appear from an examination of the will itself. The color or

shade of ink used by Chauvin wherein he filled these blank spaces in the instrument was different from that used by him when he wrote his name and when the witnesses attested it. It is also urged that below the signatures of the testator and witnesses there was written the following:

"P. S. Now Van please look after everything I know you will. Mrs. Maude Johnson knows where everything in my home.

"H. G. Chauvin.

"Pay all of my indebtedness so I want owe any one.

"H. G. C.

"July 9, 1933."

The date of the execution of the will was the 8th day of January, 1932. It is urged and argued with considerable force that this notation above copied, initialed, and date was written with the same color of ink as that used in filling in the blank spaces in the will, and that, therefore, there is a necessary conclusion that all the pen writing was done at the time, and that this written portion amounted to interlineations in the original instrument, and that the instrument was not attested after such interlineations.

Let it be conceded that this is a plausible theory, but that is all that can be said of it. It is not a proved or established fact, nor is there any evidence that tends toward this conclusion, except the one fact that the ink used is apparently of the same color. We cannot say, nor is there any proof that the initialed line below the part marked as "P. S." was written at the same time or date. There is one other fact that might be of importance if theories without proof were of any influence; and that is that Horace G. Chauvin signed his name on the left-hand margin of the first page of the will, directly opposite the alleged interlineations, that is to say, the pen written part. This signature was evidently written at the same time, and with the same colored ink as that used when he and the witnesses signed it. The only importance that may be attached to this signature at that place is the fact that it may have been written there to identify or approve what he had written into the blank spaces. There

was ample space at the lower edge or margin for his signature, and it could have been written there as well for an identification of the first page as at the place where he did actually sign, but there is no proof that this is entirely correct, but it is as strongly established as the other theory that these written-in portions were later interpolations. Under the facts established there is no showing that this will, which gives to Mrs. Johnson about $2,000 worth of property and about $400 to his relatives, violates any of the well known and well recognized principles or obligations of one relative to another. In fact, bequests to all interested parties are set out in the pen written portion of the instrument. If these portions are excluded all property would pass by inheritance and not by devise.

The instrument imports the recognition of personal obligations for favors received from a kind hearted and accommodating neighbor, who bestowed her services to relieve distress in his home. As appears from the proof of the will, the care taken in its proper execution, in the presence of witnesses, the fact that the will was so folded as to prevent a discovery by the witnesses of what had been written on the part therein, not only indicates, but was substantial proof to the trial court that the will was complete, and that in folding the will at the time of its execution so as to prevent the witnesses from observing its contents, Chauvin was doing what he intended to do at the time the will was prepared by Wagley, with the blank spaces in it. He was concealing from his friends the effect of the bequests or devises he was making. This theory supports the conclusions and findings of the trial court.

It is not enough that the appellants should have a good theory. The burden rested upon them to establish such facts as would support that theory. *Schirmer* v. *Baldwin,* 182 Ark. 581, 32 S. W. (2d) 162; §§ 4112, 4113, Crawford & Moses' Digest. (See cases there cited.)

We know of no law which inhibits the making of a will partly typewritten and partly pen written. Appellants have cited none to that effect.

The judgment will, therefore, be affirmed.