Helen REDDOCH, et al *v.*
Ora H. BLAIR, et al

84-173, 84-208                    688 S.W.2d 286
Supreme Court of Arkansas
Opinion delivered April 29, 1985
[Rehearing denied June 3, 1985.]

*Guy H. "Mutt" Jones, Sr., Phil Stratton,* and *Casey Jones; Graham Sudbury;* and *Robert R. Wright,* by: *Robert R. Wright,* for appellant.

*Fendler, Gibson & Bearden,* for appellee.

JACK HOLT, JR., Chief Justice. The issues in this appeal concern the contest of a will executed by Elizabeth H. Bowden. Two cases involving the same parties have been consolidated. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(p).

Elizabeth H. Bowden, of Osceola, Ark., died January 30, 1982, at the age of 81. She was survived by five sisters: Helen Reddoch, Geneva Rauenhorst, Ora Blair, Rosamond Banks and Irene Wilson; and two half-brothers and one half-sister. A will executed by Mrs. Bowden on December 7, 1981, was admitted to probate. The will favored Helen Reddoch and her descendants and did not provide for the decedent's other relatives. Mrs. Reddoch, who is now deceased, had lived with Mrs. Bowden since the 1940s when Mrs. Bowden's husband died. She was living with her at her death, as was Mrs. Reddoch's daughter, Rose Mahan, also now deceased.

Two of Mrs. Bowden's sisters, Mrs. Rauenhorst and Mrs. Blair, contested the will claiming it was procured through undue influence exercised by Mrs. Reddoch and Mrs. Mahan. One year later the other sisters and the half brothers and sister joined in the will contest.

After a 17-day trial during which 52 witnesses were heard, the trial court entered an order on March 26, 1984, finding (1) that Elizabeth Bowden possessed the mental capacity to make a will; (2) that her capacity was diminished making her susceptible to the undue influence of others; (3) that Mrs. Reddoch and Mrs. Mahan had the opportunity to, and did unduly influence the decedent; (4) that as a result the will contained provisions which favored them to the exclusion of other members of the family; (5) the will was an expression of the desires of Helen Reddoch and/or Rose Mahan; (6) the dispositive provisions were the result of undue influence; and (7) the revocation clause was valid, which creates an intestacy and requires that the estate be shared equally by the decedent's surviving sisters or their heirs.

It is from the trial court's order that these appeals are brought. The appellants contend that the court erred in holding the dispositive provisions of the will invalid because of undue influence. We agree.

Probate and chancery cases are tried de novo on appeal. This court does not reverse unless the findings of the probate judge are clearly erroneous, giving due deference to the superior position of the judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Rose* v. *Dunn,* 284 Ark. 42, 679 S.W.2d 180 (1984); *Terrell Faith Prophet Ministries* v. *Estate of Varnum,* 284 Ark. 108, 681 S.W.2d 310 (1984); *Edwards* v. *Vaught,* 284 Ark. 262, 681 S.W.2d 322 (1984). In this instance, the probate judge's finding that undue influence on the part of Mrs. Reddoch and Mrs. Mahan avoids the dispositive aspects of the will was clearly erroneous.

We have held many times that the party challenging the will is required to prove undue influence at the time the will was executed by a preponderance of the evidence. *Rose,* supra. Much of the testimony touched on the relationship of the parties over the years, and previous wills written by Mrs. Bowden, but did not focus on the execution of the will in question. The facts surrounding the execution of the will were as follows.

Mitchell Moore, the attorney who prepared the will, testified that he had known Elizabeth Bowden since about 1967. An accountant had informed Moore that Mrs. Bowden would be contacting him about some legal work and Rose Mahan had also contacted Moore with the same information. Neither the accountant nor Rose Mahan told Moore the nature of the work Mrs. Bowden would require. Moore stated that he first met with Mrs. Bowden at her house on September 22, 1981. He visited with her, Ms. Mahan and Mrs. Reddoch for a few minutes and then Mrs. Bowden asked the other two women to excuse themselves so they could talk. Moore testified that he was at the Bowden residence for about three and one-half hours and that he and Mrs. Bowden discussed a prior will that Susan Callison, a Memphis attorney, had made for her in 1980. Mrs. Bowden was concerned that under the 1980 will her taxes were too high and she had a bank trustee she did not want. She selected a new trustee and told Moore that she had already given two of her other sisters property. She also informed him of how long Mrs. Reddoch had lived with her and discussed some of her grandchildren. Moore indicated that Mrs. Bowden liked the Callison will but had had a change of heart about some of its provisions. Specifically, in the Callison will, Rose Mahan and Carlos Reddoch, Helen Reddoch's son, were not left any property and Mrs. Bowden now wanted to treat Mrs. Reddoch's three children equally, by leaving them each one-third of the estate. Moore stated that she initially wanted to leave everything to Mrs. Reddoch, but that he advised her that because of the tax consequences she should give Mrs. Reddoch the tax exemption equivalent. At no time, according to the attorney, did Mrs. Bowden consult Rose Mahan, or her three sisters who lived in the area: Mrs. Blair, Mrs. Reddoch or Mrs. Banks. Instead, he said she was insistent on keeping their discussions private.

After the September 22 meeting, Moore said he conferred with Mrs. Bowden by phone and was at her house one or two times. In each of these discussions, Moore stated that although Mrs. Bowden would forget some things she never forgot the property she owned and how she wanted it disposed of.

On December 7, 1981, Mrs. Reddoch took Mrs. Bowden to Moore's office to execute the will. Rose Mahan was in Memphis at the time. Mrs. Reddoch stated that Mrs. Bowden, who suffered from severe asthma, cerebral arteriosclerosis, dementia, and chronic obstructive pulmonary disease, was in good condition that day. When they arrived, Mrs. Reddoch stated that they visited with Moore about some property located in Mississippi. She then left Mrs. Bowden and Moore alone in the library to discuss the will. She went in the room a few times to check on Mrs. Bowden but stated that she did not remember any discussion about the will. Mrs. Reddoch returned to the library when the will was signed, but the will was not read during that time. Moore then drove Mrs. Bowden and Mrs. Reddoch home.

Moore's testimony supported Mrs. Reddoch's version of the events surrounding the execution. Moore further stated that he asked Mrs. Bowden questions in front of the witnesses to the will, Dr. Eldon Fairley and James Morgan, which required answers detailing the extent and nature of her property. He also asked her what she wanted to do with her property and she replied that she wanted Helen to have the property for life and then have it go to Helen's children. During their private conference, Moore said he read the entire will with Mrs. Bowden and satisfied himself that this was her will and was what she wanted to do with her property. He further stated that neither Mrs. Reddoch nor Rose Mahan had any knowledge concerning the dispositive provisions of the will.

Vickey Hobbs, an employee of Moore's law firm, testified that Mrs. Bowden appeared to understand what she was doing and seemed to be acting of her own free will.

James Morgan, one of the witnesses, stated that in his opinion Mrs. Bowden understood what she was doing in Moore's office. He said she answered questions in a correct, proper manner and appeared to know and understand what she owned and who her closest relatives were. He testified he saw nothing to indicate she was acting under any duress.

Dr. Fairley, another witness who was also Mrs. Bowden's personal physician, stated that people in Mrs. Bowden's condition can be influenced by whoever is with them. He stated, however, that on the day the will was executed she answered questions about her property correctly and indicated she understood her will and knew who she wanted to leave her property to. Dr. Fairley stated that although Mrs. Bowden still had medical problems they did not seem to be bothering her as much that day and she seemed pretty clear. He testified that he thought Mrs. Bowden knew what she was doing when she signed the will and that he would not have witnessed the will if he did not think she was aware of her actions.

Other evidence was offered at the trial that Mrs. Bowden had executed wills in 1976, 1980 and 1981. There was also evidence of a 1956 will. Each of the wills, including the 1956 will, evinced a consistent pattern of making Helen Reddoch and her descendants Mrs. Bowden's primary beneficiaries. Except for the earliest will, written some 25 years before her death, the other sisters and half-relations were mostly excluded. Furthermore, Helen was the only sister with whom Mrs. Bowden had consistently close contact since the two lived together for 40 years.

We said in *Rose* v. *Dunn,* supra, that:

Undue influence which avoids a will is not the influence which springs from natural affection or kind offices, but is such as results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property, and it must be specially directed toward the object of procuring a will in favor of particular parties. . . . The mere fact that a beneficiary is present while a will is made does not give rise to a presumption of undue influence.

We also stated in *Rose* that a rebuttable presumption of undue influence arises in the case of a beneficiary who procures the making of a will. We found no procurement in that case where the beneficiary merely drove the testator to the attorney's office and participated in the initial dis-

cussions. Here there is no evidence that either Rose Mahan or Helen Reddoch procured the will and therefore the presumption did not arise.

In determining the question of undue influence "[i]t is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relation with them at the time of its execution." *Greenwood, Guardian* v. *Wilson,* 267 Ark. 68, 588 S.W.2d 701 (1979). In *Sullivant* v. *Sullivant,* 236 Ark. 95, 364 S.W.2d 665 (1963), we explained:

> Testators are not required by law to mete out equal and exact justice to all expectant relations in the dispositions of their estates by will, and the motives of partiality, affection, or resentment, by which they naturally may be influenced, are not subject to examination and review by the courts.

In *Abel* v. *Dickinson,* 250 Ark. 648, 467 S.W.2d 154 (1971), we explained that a will is usually considered "unjust and unnatural" when a testator leaves his estate to strangers to the exclusion of the natural objects of his bounty without any apparent reason. We said, however:

> A will cannot be said to be unnatural because a testator preferred one for whom she had developed a close and affectionate relationship . . . or when the natural objects of the testator's bounty are in no need of funds, aid or assistance.

Here, the proof indicated that not only was the decedent in a close relationship with Helen Reddoch, but she had made gifts to some of her other sisters and, on the whole, considered that they were not in need of financial help from her. The fact that their relationship made Mrs. Reddoch and Rose Mahan natural objects of Mrs. Bowden's bounty, coupled with the strong pattern she had shown over the years of favoring Mrs. Reddoch and her children, support the validity of the will. We find, therefore, that the trial judge clearly erred when he held the will invalid.

Accordingly we reverse and remand with instructions that the 1981 will be admitted to probate. Our holding makes it unnecessary to reach the other issues raised in this appeal or the issues raised in the companion case.

Reversed and remanded.