## IN THE MATTER OF THE CONSERVATORSHIP OF
### Wilhelmine K. KUETEMAN (Now Deceased)

92-3                                                    832 S.W.2d 234

Supreme Court of Arkansas
Opinion delivered June 9, 1992

*Karr, Hutchinson & Stubblefield*, for appellant.

*Harper, Young, Smith & Maurras*, for appellee City National Bank of Fort Smith.

*Pryor, Barry, Smith, Karber & Alford*, for appellee Mavis Stipe.

TOM GLAZE, Justice. This is a will contest case. Karlene Kueteman initiated this action contesting the validity of the will of her aunt, Wilhelmine (Minnie) Kueteman. Minnie never married, had no children and had outlived her parents, brothers and sisters. Mavis Stipe was a friend and companion of Minnie's for nearly forty years, and she was the primary beneficiary under the terms of Minnie's will. Karlene claims Mavis unduly influenced Minnie when Minnie executed her will and also asserts her aunt did not have the necessary testamentary capacity at the time of the will's execution. After the trial court heard evidence bearing on both issues, it declared Minnie's will valid and admitted it to probate. In this appeal, Karlene argues the trial court's findings are clearly erroneous. We do not agree.

■ Probate cases are tried *de novo* on appeal, and this court does not reverse unless the findings of the probate judge are clearly erroneous, giving due deference to the superior position of the judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Baerlocker* v. *Highsmith*, 292 Ark. 373, 730 S.W.2d 237 (1987). In our review, other pertinent principles warrant repeating before we discuss the facts in this case.

■ We first mention the well-settled rule that once the proponent of a will shows the will is rational on its face and has been executed and witnessed in accordance with the required statutory requirements, the party contesting the will's validity has the burden of proving by a preponderance of the evidence that the testator lacked mental capacity or was unduly influenced at the time the will was executed. *Rose* v. *Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1989); *Gray* v. *Fulton*, 205 Ark. 675, 170 S.W.2d 384 (1943). We next relate the recognized principle that the question of undue influence and mental capacity are so closely interwoven that they are considered together. *See, e.g., Rose,* 284 Ark. 42, 679 S.W.2d 180. If the maker of a will, or other instrument has sufficient mental capacity to retain in his or her memory, without promptings, the extent and condition of his or her property, and to comprehend how he or she is disposing of it, and to whom and upon what consideration, then he or she possesses sufficient mental capacity to execute such instrument. *Id.* Influence by a person over the maker of a will becomes undue so as to invalidate the will, only when it is extended to such a degree as to override the discretion and destroy the free agency of the testator. *Baerlocker,* 292 Ark. 373, 730 S.W.2d 237.

Here, Karlene specifically contends that Minnie lacked testamentary capacity to execute her will because she was in bad health at the time of the will's execution and that Mavis exerted undue influence on Minnie by requesting that Minnie leave most of her estate to Mavis because Mavis was the only one who would take care of her. Our review of the record in light of the legal principles set out above reflect Karlene's contentions are meritless.

Minnie first went to see attorney Robert Taylor about matters concerning her estate on September 10, 1987. At this

time, she gave specific instructions to Taylor on how she wanted her will to be drafted, and Taylor testified that Minnie was a fairly forceful woman and knew exactly what she wanted to do. Because Minnie was unable to drive because of poor eyesight, Mavis took her to see the attorney and was present in the room during this first meeting. However, Taylor testified that Mavis did not talk much and only entered into the conversation when Minnie needed help remembering something. Minnie explained to Taylor that Mavis had been a longtime friend and neighbor who had cared for her and had been reliable, and that she wanted to reward her for her faithfulness. Later in their discussions, Taylor testified that he specifically asked if Mavis had pressured her in anyway, and Minnie replied, "Certainly not."

Between the time Minnie instructed her attorney on the preparation of her will and the time the attorney had the will ready for her signature, Minnie's health declined. Minnie had a stroke on September 17, 1987, and was hospitalized for a short time. While she was in the hospital, Minnie signed some deeds she had Taylor prepare and told him to go ahead and complete her will as soon as possible. During a trip to Florida in December of 1987, Minnie had a seizure and was hospitalized in Florida and later transferred by air ambulance to a hospital in Fort Smith. On February 11, 1988, Taylor took Minnie's will to the hospital for execution but left without having it signed or witnessed because Minnie appeared to be sedated. On February 13, Minnie was discharged and returned home. Three days later, Taylor and his wife went to Minnie's house where Minnie signed her will and the will was duly witnessed. Minnie stayed at her home until she suffered another stroke on October 3, 1988, and she eventually was admitted into a nursing home. She died on November 2, 1990.

While the record is clear that Minnie, an eighty-year old woman at the time of the execution of her will, had declining health, there is no proof that she did not possess the proper mental capacity to execute her will. In fact, the only evidence before this court is the attorney's and his wife's testimony to the contrary.

██ Further, we cannot say that the trial judge's finding that Minnie was not under undue influence is clearly erroneous. While Mavis was in the room when Minnie first discussed the

preparation of her will with her attorney, Mavis was not present during the execution of the will when Minnie reaffirmed her testamentary wishes. Even if Mavis had been in the room when Minnie executed her will, we have stated that the mere fact that a beneficiary is present when a will is made does not give rise to a presumption of undue influence. *Reddoch v. Blair*, 285 Ark. 446, 688 S.W.2d 286 (1985).

Karlene further argues that the fact that Minnie left the bulk of her estate to someone outside of the family shows that she was under undue influence from Mavis. She also points out that Minnie had two prior wills executed in 1974 and 1985 that left her estate to her family. Karlene's concerns are easily explained.

First, when Minnie's prior wills were executed, some of her sisters were still living, and a witness testified that after her last sister died in 1987, Minnie expressed concern over getting her affairs in proper order. Moreover, this court has recognized that a will is usually considered "unjust and unnatural" when a testator leaves her estate to strangers to the exclusion of the natural objects of her bounty without any apparent reason. *Reddoch*, 285 Ark. 446, 688 S.W.2d 286. However, we also have stated that a will cannot be said to be unnatural because a testator preferred one for whom she had developed a close and affectionate relationship. *Id.*

Here, Karlene lived in California and saw her aunt usually once a year at Christmas time. Mavis lived with Minnie and had been her friend, caretaker and companion for nearly forty years. Minnie and Mavis owned cars, a boat and a lake house together. In short, we see nothing in the record to indicate that the will was "unjust or unnatural." Further, we note that Karlene was not forgotten in her aunt's will; several items of personal property were left to Karlene in the will and also a $25,000 certificate of deposit was made payable to Karlene upon Minnie's death.

Lastly, we note that before Minnie's death, Karlene had a conservatorship established because she felt Mavis was misusing Minnie's money. There is no evidence of Mavis misusing any funds. In fact, the banker in charge of the conservatorship testified that Mavis was very cooperative, and the bank found no evidence of misuse of funds.

In sum, we cannot say that the trial court's findings that Minnie had the proper testamentary capacity to execute her will and that she was not under undue influence are clearly erroneous. We affirm.