IN THE MATTER of the Estate of Charlye Vera Forrester DAVIDSON

91-326　　　　　　　　　　　　　　839 S.W.2d 214

Supreme Court of Arkansas
Opinion delivered October 19, 1992

*Kay L. Matthews* and *James L. Sloan*, for appellant.

*Hardin, Jesson, Dawson & Terry*, by: *P.H. Hardin*, for appellee.

ROBERT L. BROWN, Justice. This appeal presents two points for our review: (1) whether the probate court erred in failing to find either that the testatrix was of unsound mind when she executed her 1984 and 1985 wills or that the wills were procured through her lawyer's exercise of undue influence upon her; and (2) whether the non-contest clauses to the two instruments are enforceable. We agree with the probate court that the 1985 will is valid and that it revoked the 1984 will, and we affirm.

The decedent, Charlye Vera Forrester Davidson, a resident of Waldron, died on February 3, 1989, at the age of ninety. She was living in a nursing home at the time of her death and left an estate in excess of two million dollars. For a number of years, Mrs. Davidson received legal representation from Donald Goodner, who, with his wife, also ran personal errands for the decedent. On February 24, 1984, Goodner prepared a will for Mrs. Davidson, in which, among other things, he was appointed her executor and was given, after other bequests, the residue and remainder of her property. Subsequently, on December 11, 1985, Goodner prepared another will for the decedent in which he was named co-executor and from which he was dropped as a residual beneficiary in favor of Mrs. Davidson's nephews, John Charles Forrester and William Hughes Forrester. The nephews' names, according to Goodner, were added as residuary beneficiaries on a blank line after the will was typed. Both wills contained no-contest clauses which provided for disinheritance in the event that a contest was filed. Over the next three years, Goodner and his wife received gifts from the decedent totaling $60,000.

Following Mrs. Davidson's death, the 1984 will was admitted to probate on March 27, 1989. William Forrester then petitioned the probate court to set it aside and alleged that at the time the instrument was executed, the decedent was not of sound mind and was acting under the influence of her lawyer, Donald Goodner. After the will contest was filed, Goodner discovered the decedent's 1985 will behind a dishwasher in the decedent's house. A petition to admit the 1985 will to probate was filed on September 19, 1989, and that will was contested by William Forrester with the same allegations of unsound mind and undue influence advanced.

The probate court heard Goodner's petition to admit the 1985 will and nephew William Forrester's contest on April 9, 1991. In the resulting decree, the probate court declared that the 1985 will revoked the 1984 will, and it admitted that 1985 will to probate. The court also found that at the time of the execution of the two instruments, the decedent was "in all respects competent, was not acting under restraint or undue influence, and that the execution, subscription, and publication of each of the instruments were not procured by fraud practiced upon her by anyone, but each of the wills was her free act and deed." The court then appointed Goodner as executor of the decedent's estate.

## I. SOUND MIND

William Forrester now seeks to invalidate both the 1984 and 1985 wills on grounds of lack of testamentary capacity in an effort to have the estate pass by intestacy. In this effort, he presented evidence of the testatrix's developing dementia, aging diseases, and paranoid ideation regarding her house. There was also testimony that the testatrix suffered from near-total blindness.

■ We try probate cases *de novo* on appeal, and the decision of the probate judge will not be reversed unless it is clearly erroneous, that is, clearly against the preponderance of the evidence. *Gifford* v. *Estate of Gifford*, 305 Ark. 46, 805 S.W.2d 71 (1991); *Conkle* v. *Walker*, 294 Ark. 222, 742 S.W.2d 892 (1988); *Sullivant* v. *Sullivant*, 236 Ark. 95, 364 S.W.2d 665 (1963). In our review, we give due deference to the superior position of the probate judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Daley* v. *Boroughs*, 310 Ark. 274, 835 S.W.2d 858 (1992).

■ Once the proponent of a will shows that the will is rational on its face and has been executed and witnessed in accordance with testamentary formalities, the party challenging the will's validity is required to prove by a preponderance of the evidence that the testator lacked mental capacity or was unduly influenced at the time the will was executed. *In Re Conservatorship of Kueteman*, 309 Ark. 546, 832 S.W.2d 234 (1992); *Reddoch* v. *Blair*, 285 Ark. 446, 688 S.W.2d 286 (1985); *Rose* v. *Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984); *Thompson* v. *Orr Estate*, 252 Ark. 377, 479 S.W.2d 229 (1972).

The decedent's physician, Dr. Louis O. Lambiotte, testified that between 1960 and 1985, Mrs. Davidson began suffering from diseases associated with aging, including macular degeneration, arteriosclerosis, mild hypertension, abnormal glucose tolerance, a systolic murmur of the aortic valve, and paranoid ideation with reference to her house and the objects in it. He further testified that she always recognized him and knew where she was. In his view, "her delusional thinking . . . represented a slot of abnormality" which would not have prevented her from recognizing family members, and specifically her two nephews.

A psychiatrist, Dr. Joe H. Dorzab, who saw the decedent in April 1985, diagnosed her primary problem as deteriorating memory caused by either Alzheimer's dementia or multi-infarct dementia. Other witnesses described Mrs. Davidson as strong-willed, eccentric, and "nutty." Toward the end of her life, and in 1985, she was obsessed by the fact that someone was trying to enter her house and take her things. This caused her to lock her house and nail her doors shut. The probate court also had the benefit of a lengthy telephone conversation between William Forrester and the testatrix which was taped on May 6, 1987. That tape, which provided some insight into the testatrix's mental state, was played at trial.

■ Our generally expressed rule for testamentary capacity is that the testatrix must be able to know the natural objects of her bounty and the extent of her property; to understand to whom the property is being given; and to realize those who are being excluded from the will. *Daley* v. *Boroughs, supra; In Re Conservatorship of Kueteman, supra; Hiler* v. *Cude*, 248 Ark. 1065, 455 S.W.2d 891 (1970).

In the present case, nothing before us suggests that the elements of mental competency were not present when Mrs. Davidson executed her December 11, 1985 will. No expert opinion contravenes her testamentary capacity on that date. On the contrary, three witnesses attested to her signature on the will, and none espoused the view that there was any unusual behavior on Mrs. Davidson's part or any problem concerning soundness of mind. Two witnesses in fact recall Mrs. Davidson's specifically declaring that she was there to sign her will. Moreover, there was testimony that at the time Mrs. Davidson was aware of the property she owned by Lake Waldron and of her properties in Colorado and Texas.

■ Our probate law does not require that a testatrix mete out exact justice in the devise of her property. *See Bruere* v. *Mullins*, 229 Ark. 904, 320 S.W.2d 274 (1959). So long as she has the capacity to make a will, she may be unfair, eccentric, injudicious, or capricious in making distribution. *Id.* Moreover, the fact that Mrs. Davidson was suffering ideation relative to her house and incipient dementia does not, in itself, establish an impairment of testamentary capacity. *Id.* As Dr. Lambiotte testified, this could represent only "a slot of abnormality."

Any assertion that Mrs. Davidson was unfair to her nephews is difficult to fathom in light of the fact that they received almost ninety percent of the estate's assets as residuary beneficiaries under the 1985 will. But, more importantly, the proposition that she did not know her property or who her heirs were and was unable to interrelate those factors was simply not proven.

■ Because there was insufficient proof that the testatrix lacked the requisite mental capacity to make a will on in December 11, 1985, Forrester's contest must fail.

## II. UNDUE INFLUENCE

The additional assertion of undue influence really pertains more to the 1984 will where Goodner was a residuary beneficiary than to the 1985 will where he was not a recipient of the residuary estate. William Forrester contends, however, that the circumstances surrounding the two wills taints the 1985 will. He further looks to the testator's signature on the 1985 will which, he urges, indicates that she was assisted in her execution, the $60,000 in

gifts to Goodner and his wife, and the line and different type for the residuary beneficiaries in the 1985 will as highly suspicious. Lastly, he contends that Mrs. Davidson would never have left his infirmed son, Billy, out of the 1985 will.

■ Undue influence sufficient to void a will must not spring from natural affection but must result from fear and coercion so as to deprive a testatrix of free will and direct the benefits of the will to particular parties. *Rose* v. *Dunn, supra.* We discussed the manner of proof required for undue influence sixty years ago:

> Undue influence is generally difficult of proof. It is generally exercised in secret, not openly, and, like a snake crawling upon a rock, it leaves no track behind it, but its sinister and insidious effect must be determined from facts and circumstances surrounding the testator, his physical and mental condition as shown by the evidence, and the opportunity of the beneficiary of the influenced bequest to mold the mind of the testator to suit his or her purposes.

*Hyatt* v. *Wroten*, 184 Ark. 847, 853, 43 S.W.2d 726, 728 (1931).

Because of the allocation of the assets of her estate, it is difficult to discern a sinister or insidious effect from the 1985 will. It is true that Goodner had a confidential relationship with Mrs. Davidson. Beyond that, we can only speculate about what her susceptibility to any testamentary suggestions by Goodner might have been. Our major problem with the contestant's argument is that neither Goodner nor any persons associated with him are distributees under the 1985 will. Without some assets flowing to particular parties sought to be benefitted by the supposed culprit, an undue influence claim is hard to sustain.

■ Forrester asserts that the will was unjust and unnatural and is, therefore, invalid. He adduces the following authority to support his argument:

> The expression "unjust and unnatural will" is usually applied when a testator leaves his estate, or a large portion of it, to strangers, to the exclusion of natural objects of his bounty without any apparent reason. [Citations omitted.] A will cannot be said to be unnatural because a testator preferred one for whom she had developed a close and affectionate relationship [citations omitted], or when the

natural objects of the testator's bounty are in no need of funds, aid or assistance. [Citation omitted.]

*Abel* v. *Dickinson*, 250 Ark. 648, 653-654, 467 S.W.2d 154, 156 (1971); *see also Edwards* v. *Vaught*, 284 Ark. 262, 269, 681 S.W.2d 322, 326 (1984).

■ Here, roughly ninety percent of the benefits went to the Forrester brothers, who were the testatrix's nephews. They were not strangers but legitimate objects of her bounty. Because of this, the only remaining point of discussion is whether the bequests to the Methodist Church and its affiliates and other family members and charities were so unnatural as to evidence a deprivation of free will. We cannot say that they were. Mrs. Davidson was, during her life, a committed member of the Methodist Church, and remembering the church in her will was far from a suspicious act. She bequeathed her home and furnishings to a foster child and made other bequests to two first cousins, a cemetery park, and a recreational park. Contrary to appearing unnatural, these bequests are readily understandable and reasonable.

■ We observe no strangers or unnatural beneficiaries under the will and no proof of coercion waged against Mrs. Davidson. Finally, though suspicions and theories abounded in this case, allegations of undue influence must be supported by proof. *Chauvin* v. *Johnson*, 193 Ark. 600, 101 S.W.2d 432 (1937). Here, the proof was deficient and the claim of undue influence cannot prevail.

## III. NO-CONTEST CLAUSES

■ Different no-contest clauses appeared in the 1984 will and the 1985 will. The 1984 will does not specifically address a contest by Forrester or his brother; the 1985 will does. Forrester seeks to invalidate the two clauses because he contends they are contrary to public policy. This issue was not raised before the probate court, however, and we will not consider it on appeal. *See Irvin* v. *Jones*, 310 Ark. 114, 832 S.W.2d 837 (1992).

Because we affirm the probate court's decision admitting the 1985 will to probate, it is not necessary for us to consider the validity of the revoked 1984 will.

Affirmed.