2009 Ark. App. 807

Robert BAXTER, Sr., Randy Baxter, Beverly Robertson, and Tona Coleman, Appellants

v.

David PETERS and Estate of Leathel Baxter, Deceased, Appellees.

No. CA 09–594.

Court of Appeals of Arkansas.

Dec. 2, 2009.

Milligan, Medlock & Gramlich, LLP, Fort Smith, by: Phillip J. Milligan, for appellants.

Batchelor & Batchelor, Van Buren, by: Fines F. Batchelor, Jr., for appellee.

DAVID M. GLOVER, Judge.

This is a will contest. Appellants, Robert Wayne Baxter, Sr., Randy Baxter, Beverly Robertson, and Tona Coleman, are the grandchildren of Leathel Baxter, and appellee David Peters is the executor of Ms. Baxter's estate. Appellants appeal from the trial court's order that found their grandmother's will to be valid and admitted it to probate. They contend that the trial court erred in determining that the statutory formalities for executing a will were satisfied. In particular, they contend that the trial court erred both in refusing to direct a verdict in their favor when the executor failed to produce two living attesting witnesses at the hearing and in concluding there was substantial compliance with the statutory requirements for witnessing the execution of the will. We affirm.

*The executed will*

Ms. Baxter's will left bequests of $1,000 each to three of her grandchildren (Tona, Randy, and Beverly); $10,000 to one of her grandchildren (Robert Wayne Baxter); $1,000 each to three cemeteries (Locke Cemetery Fund, Pope Cemetery Fund, and Cain Cemetery Fund); and the remainder of her estate to the National Cemetery in Fort Smith, Arkansas. Her will was signed by Ms. Baxter and three witnesses: Carl Creekmore, Sr., who died prior to Ms. Baxter; Morril Harriman; and Susie Parnell. The will contained a "Proof of Will," in regular form, in which all three witnesses stated on oath that the

testatrix, in their presence, signed the instrument or acknowledged her signature to it, declared the instrument to be her will, and requested them to attest her execution of it. They further swore that they signed their names in the testatrix's presence as attesting witnesses, and that she appeared to be eighteen years of age or older, of sound mind, and acting without undue influence, fraud, or restraint. The proof of will was notarized by Cindy Winborn and dated August 23, 1995.

Appellants responded to requests for admission, admitting in part "that at the time the will admitted to probate was executed, it was executed in the presence of Carl Creekmore, Morril Harriman and Susie Parnell"; "that at the time of the execution of the will of Leathel Baxter admitted to probate herein, that each of the witnesses, in the presence of each other, signed a proof of will wherein each of said witnesses swore that said testatrix appeared to be eighteen years of age or older, of sound mind and acting without undue influence, fraud or [3]duress, before Cindy Winborn, a duly commissioned and acting Notary Public"; and "that the proof of the will admitted to probate herein was made by said witnesses in good faith." At the outset of the hearing, the parties stipulated that the will was signed by Ms. Baxter and Judge Carl Creekmore; also by stipulation, they admitted the deposition of Morril Harriman.

### The Contested Proof

By his deposition testimony, Mr. Harriman explained that in 1995 he practiced law in Van Buren, Arkansas, in a suite of offices at which Carl Creekmore, a former judge, also practiced law. He said that Cindy Winborn served as secretary to him and Creekmore; and that a third attorney, Ray Hodnett, also practiced there and whose secretary was Susie Parnell, one of the attesting witnesses. He stated that to the best of his knowledge, after twelve years, the proof of will truly reflected what occurred; that he did not have an independent recollection of the events, but that he had no reason to believe that the proof of will was not true; and that the proof of will reflected the normal course of action concerning the execution of wills in that office.

Cindy Winborn, the notary, testified for appellees that she was secretary for Judge Creekmore and Morril Harriman in 1995; that she remembered Ms. Baxter's name, but would not be able to identify her face; that she probably typed the will; that she notarized the proof of will and that Ms. Baxter was still in the office when she did so; that Judge Creekmore, Morril Harriman, and Ray Hodnett were the attorneys in those offices at that time; that Carl Creekmore, Jr., the judge's son, was not a part of the office in 1994 or 1995; [4]that Susie Parnell was also a notary; that she believed this will was handled in a similar manner to the regular practice in the office; that Judge Creekmore was a stickler for details; that all of the persons listed on the proof of will signed at the time the will was executed; that she would not have notarized it if they had not all been present; and that even though she had no specific memory of this situation, she had no reason to believe that normal procedure was not followed.

At the conclusion of appellee's presentation of evidence, the trial court noted that the entire file in the case was part of the record and would be reviewed.

Appellee rested and appellants moved to dismiss, contending that the statutory proof of formalities had not been established because the executor had not presented the testimony of both of the living witnesses, and the only attesting witness who testified had stated he did not specifi-

cally recall this event. The trial court overruled the motion.

Appellants presented Carl Creekmore, Jr., who testified that he practiced with his father from 1976 to 1983, and that his father would sometimes have witnesses sign wills outside the presence of the testator.

David Peters testified that his brother, Bill, was the executor in Ms. Baxter's prior will; that she and Bill decided she needed another will in 1995; that Bill called him and asked him to serve as executor on the new will; that Ms. Baxter told him she accepted him (David) as her executor; that Ms. Baxter was "fearful of her grandchildren getting ahold of her funds"; that she did not trust them; that in 1995, he, Bill, and Ms. Baxter went to Judge Creekmore's office where the will at issue was drafted and executed; that he sat next to Ms. Baxter and heard her tell Judge Creekmore exactly what she wanted in the will; that he did not benefit financially from any of Ms. Baxter's financial dealings; that the bequeath to the National Cemetery was her decision, he had nothing to do with it; and that his dad and Ms. Baxter's husband were "blood relatives."

Appellant Beverly Baxter Robertson testified that Ms. Baxter was her grandmother; that there are three other grandchildren; and that Ms. Baxter had one child.

Ray Hodnett testified that he is an attorney and has practiced since 1973; that he shared an office with Judge Creekmore and Morril Harriman [in 1995]; that Judge Creekmore was only in the office about half a day; that the only thing he ever saw Creekmore do was wills; that Susie Parnell is Hodnett's secretary; that she has been with him twenty-eight years; that he started noticing Creekmore doing wills because Creekmore had a "one-stop deal"; that he would see clients go back with the judge; that "pretty soon" Cindy Winborn (Harriman's secretary) would go into the office; that she would leave and then she would come back with a document; that on at least one occasion, he (Hodnett) signed a will when the testator and other witnesses were not present; and that while he was part of those offices, he did not observe everybody gathering in the judge's office with the testator and signing the will in the testator's presence.

Susie Parnell testified that she has worked for Ray Hodnett for twenty-seven years; that she worked with him in 1995 when he was sharing office space with Creekmore and Harriman; that she did not know Ms. Baxter; that it was her (Parnell's) signature on the will and proof of will; that Creekmore never called her back to his office when everybody was present at the will signing; that normally Cindy Winborn would hand her the document, and she would sign it; that she did not remember this particular will, but that she had no reason to doubt that it was done in that fashion, *i.e.,* presenting it to her at her desk to sign outside the presence of the testator.

Cindy Winborn was recalled by appellee. She maintained that the normal procedure was "that we went to the Judge's office" and signed and notarized the will; that they might have done that in the front office at times, but that "he normally would have it come back to his office [and she had] no reason to expect that that's not what happened here." She said that at the time she notarized the proof of will, she knew that Ms. Baxter had been there, and that "at the time, I knew whether or not all of us had gone back to his office to sign."

Appellants renewed their motion for a directed verdict at the close of their case and at the close of all the evidence. The

trial court took the matters under advisement and subsequently concluded that the statutory formalities for execution had been satisfied and proved. Appellants divide their point of appeal into two sections, which at times overlap.

*Motion to Dismiss Based on Insufficient Number of Attesting Witnesses Testifying at Hearing*

Appellants first contend that the trial court should have granted their motion for a directed verdict because the executor of the will rested his case without securing the testimony of one of the two *living* witnesses to the will, *i.e.*, Susie Parnell, and "the testimony of attesting witnesses is required live at trial." We find no error in the trial court's refusal to dismiss.

■ In discussing appellant's first argument, we note that, in a bench trial, a motion to dismiss is the proper motion for challenging the sufficiency of an opponent's evidence. As we explained in *Rymor Builders v. Tanglewood Plumbing Co.*, 100 Ark.App. 141, 144–45, 265 S.W.3d 151, 153 (2007):

> We begin with a note about terminology. The bench and bar often refer to a "directed verdict" during a non-jury case. This is a misnomer. Because no jury is in the box, no verdict will be given. The proper motion to challenge the sufficiency of an opponent's evidence in a non-jury case is a motion to dismiss. Ark. R. Civ. P. 50(a).

> But there is truth in this common misnomer because the circuit court must use the same legal standard in evaluating a motion to dismiss as it would in evaluating a motion for a directed verdict. The court must decide "whether, if it were a jury trial, the evidence would be sufficient to present to the jury." *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 264, 61 S.W.3d 835, 838

(2001). If the non-moving party has made a prima facie case on its claim or counter-claim, then the issue must be resolved by the finder of fact. *Swink v. Giffin*, 333 Ark. 400, 402, 970 S.W.2d 207, 208 (1998). In evaluating whether the evidence is substantial enough to make a question for the fact-finder, however, the circuit court may not assess the witnesses' credibility. *First United Bank v. Phase II*, 347 Ark. 879, 902, 69 S.W.3d 33, 49 (2002); *Swink*, 333 Ark. at 403, 970 S.W.2d at 209.

■ Here, appellants' basic argument for dismissal was that because the executor did not present the testimony of *both* of the *living* witnesses "as live testimony at the hearing," he failed to present a *prima facie* case that the statutory formalities had been followed. Their position in this regard is not supported by either our statutes or our case law.

Arkansas Code Annotated section 28–40–117 (Repl.2004), provides in pertinent part:

28–40–117. Proof of will.

(a) An attested will shall be proved as follows:

(1) By the testimony of at least two (2) attesting witnesses, if living at known addresses within the continental United States and capable of testifying; or

(2)(A) If only one (1) or neither of the attesting witnesses is living at a known address within the continental United States and capable of testifying, or if, after the exercise of reasonable diligence, the proponent of the will is unable to procure the testimony of two (2) attesting witnesses, in either event the will may be established by the testimony of at least two (2) credible disinterested witnesses.

(B) The witnesses shall prove the handwriting of the testator and such

other facts and circumstances, including the handwriting of the attesting witnesses whose testimony is not available, as would be sufficient to prove a controverted issue in equity, together with the testimony of any attesting witness whose testimony is procurable with the exercise of due diligence.

. . . .

(d) The provisions of this section as to the testimony of subscribing witnesses shall not exclude the production of other evidence at the hearing on the petition for probate, and the due execution of the will may be proved by such other evidence.

Arkansas Code Annotated section 28–40–118 (Repl.2004), further provides in pertinent part:

28–40–118. Manner of taking testimony.

(b) If the will is contested, or on motion of an interested person made prior to admission of the will to probate, the will shall be established by testimony taken in the manner required for taking testimony in equity cases, or as the court may direct.

In making their argument, appellants rely on *Carter v. Meek,* 70 Ark.App. 447, 20 S.W.3d 417 (2000), in which we reversed and remanded an order admitting a will to probate. In *Carter,* one of the two attesting witnesses testified at the hearing; the other attesting witness did not, and no evidence was offered as to whether he was living at a known address within the United States, or whether any diligence was exercised in procuring his testimony at the hearing. We determined that the probate court clearly erred in concluding that the will's proponent had met her burden of proving proper execution of the will under section 28–40–117.[9] The problem with appellants' argument, however, is that in *Carter,* there were only two attesting witnesses. Here, there were three, and as the trial court aptly explained:

The requirement is that there be two witnesses. Judge Creekmore is one. He signed a proof of will and is not available to testify due to his death. Morril Harriman is the second. His testimony is that he sometimes witnessed wills for Judge Creekmore that he had not actually seen the testator sign and sometimes he did witness the testator sign the document. He did sign a contemporary Proof of Will stating that he did. That is sufficient. Ms. Parnell testified she did not witness the signing. That leaves two, and the Court further finds that the testatrix was over the age of 21 years, and of sound and disposing mind and memory, and that the subscriptions to the foregoing instrument of writing are genuine.

There is no contention that the signature of any person on the document is a forgery.

Appellants' argument that the motion to dismiss should have been granted based upon the sheer *number* of living witnesses that were presented at trial is further undercut by the fact that Susie Parnell *did* testify as part of their case after appellants' motion to dismiss was denied. In *Shamlin v. Shuffield & Garot,* 302 Ark. 164, 167, 787 S.W.2d 687, 689 (1990), our supreme court explained:

The appellant cannot prevail on this issue. After his motion to dismiss was denied, the appellant went forward with his proof. His own testimony revealed that he was the one who cut the timber in question, even though he did not know for certain to whom the property belonged. If, after the denial of a request for a directed verdict, or in this case, a dismissal, a defendant introduces evidence which, together with that introduced by the plaintiff, is legally suffi-

cient to sustain a verdict, he waives his claim of error by the court in refusing to direct a verdict, or dismiss, at the close of the plaintiff's case.

### Statutory Formalities

The second portion of appellants' argument further expands upon their contention that the executor did not satisfy his burden of proving that the statutory formalities were followed by contending that "the trial court erred in ruling substantial compliance existed in the execution of the will." Overlapping in part with the first portion of their argument, which has already been addressed, appellants further argue that appellee, the executor, as proponent of the will, did not satisfy his initial burden of proving that there was substantial compliance with the formalities required for execution of the will because:

> When viewing the evidence presented by Mr. Peters, Mr. Peters cannot prove the two living attesting witnesses were in the room with the Testatrix, Ms. Baxter, at the time of execution; did not present but one attesting witness's testimony, namely, Mr. Morril Harriman's deposition testimony, which does not suggests [sic] that one witness was in the room at the time of execution. Mr. Peters, as proponent, did not call the additional living attesting witness, a fact which in and of itself warrants a determination that statutory formalities required in the execution were not met.

Again, we disagree.

We try probate cases *de novo* on appeal, and the decision of the trial judge will not be reversed unless it is clearly erroneous, that is, clearly against the preponderance of the evidence. *In re Estate of Davidson,* 310 Ark. 639, 839 S.W.2d 214 (1992). In our review, we give due deference to the superior position of the trial judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.*

We hold that the trial court did not clearly err in finding that the will was witnessed by the appropriate number of witnesses and with the required formality. The proof of will was signed by Carl Creekmore, Morril Harriman, and Susie Parnell, all of whom had signed the will as witnesses, even though only two witnesses are required by statute. In signing the proof of will, they swore that in their presence, the testatrix signed the instrument or acknowledged her signature to it; declared the instrument to be her will and requested that they attest her own execution; and that in the testatrix's presence each of them signed their respective names as attesting witnesses. Carl Creekmore had died by the time of the hearing, but the parties stipulated as to the authenticity of his signature and that of Ms. Baxter. The parties also stipulated to the admission of Mr. Harriman's deposition testimony, and although he acknowledged that he had no independent recollection of the events, he stated that he had no reason to believe that the proof of will was not true and that it reflected the normal course of action concerning the execution of wills in that office. Cindy Winborn testified that she notarized the proof of will, that Ms. Baxter was still in the office when she did so, and that she would not have notarized the document if they had all not been present. Although acknowledging her own signature, Susie Parnell contested that she had witnessed the will in Ms. Baxter's presence. She also testified that she never saw the other attesting witnesses sign in Ms. Baxter's presence. She further testified that it was not the normal course of action in that law office for the witnesses to sign in the presence of the testator. We leave to the trial court the weight to be given to the testimony of

the witnesses. *In re Estate of Davidson, supra.*

Affirmed.

GLADWIN and BROWN, JJ., agree.