Rita HODGES *v.* Laverne CANNON and Alliene Cannon, the
Estate of Alvin L. Moore, and Susan Fox as Executrix of the
Estate of Alvin L. Moore, Deceased

CA 99-230                                           5 S.W.3d 89

Court of Appeals of Arkansas
Division I
Opinion delivered December 1, 1999

*Evans & Evans*, by: *James E. Evans, Jr.*, for appellant.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Edwin N. McClure*; and *Stephen Lee Wood, P.A.*, by: *Stephen Lee Wood*, for appellees.

SAM BIRD, Judge. Appellant, Rita Hodges, appeals an order of the Benton County Probate Court dismissing her contest of the will of her late uncle, Alvin L. Moore. Hodges also appeals an order of the Benton County Chancery Court dismissing her complaint in which she alleged that she had an oral contract with Moore whereby he would make her a beneficiary of his will in return for her moving into his house and taking care of him. Hodges also appeals a joint order of the probate and chancery courts imposing sanctions on her and her counsel pursuant to Ark. R. Civ. P. 11. For clarity we will first set forth the underlying facts, followed by separate discussions of the decisions of the probate court, the chancery court, and the joint order of both courts.

*Facts*

Rita Hodges, Alvin Moore's niece, had been named as the sole beneficiary of Moore's will, which he executed on October 23, 1996 (the 1996 will). However, on August 6, 1997, Moore revoked the 1996 will and executed a new one (the 1997 will) in which he designated appellees Lavern and Alliene Cannon, his longtime friends and neighbors, as the sole beneficiaries of his estate, and disinherited Hodges. Moore died of cancer on August 16, 1997, at the age of seventy-six.

On August 18, 1997, Susan Fox, an attorney and the designated executrix of Moore's 1997 will, filed a petition for probate of will and appointment of personal representative, and on the same day an order was entered admitting the will to probate and appointing Fox as executrix. On August 27, 1997, in probate court, Hodges filed a demand for notice of proceedings, a petition to remove Fox as the personal representative of the estate, a petition for appointment of herself as personal representative of the estate, and a contest of the 1997 will. Hodges alleged in her will-contest petition that the Cannons had procured the 1997 will through undue influence on Moore; that Moore lacked testamentary capacity to execute a valid will on August 6, 1997; that the will was not

properly executed; and that Susan A. Fox, the executrix, was the preparer of, and benefitted from, the will.

In addition, on August 27, 1997, appellant filed in Benton County Probate Court and in Benton County Chancery Court identical complaints in which she alleged that there existed an oral contract by which Moore agreed to make her a beneficiary of his will in return for her moving into his house and taking care of him. In March 1998, appellee Fox filed a motion in probate court requesting that sanctions be imposed on appellant and her counsel pursuant to Ark. R. Civ. P. 11. The motion alleged a lack of proof supporting the allegations in Hodges's complaint and noted the court's disposition of the issues raised by pleadings. In a brief that accompanied the motion, Fox argued that Hodges's claims were not well grounded in fact, warranted by existing law, or a good-faith argument for the extension, modification, or reversal of existing law, but were interposed for the improper purpose of harassment, unnecessary delay, or needless increase in the cost of litigation.

The will contest in probate court and the contract case in chancery court were consolidated for trial, at which the presiding judge sat as both probate judge and chancellor. After Hodges presented her case-in-chief, the court granted appellees' motions to dismiss appellant's contract-based complaint in chancery court and appellant's petition contesting the will in probate court, which the court followed with written orders dated July 30, 1998, and August 3, 1998, respectively. On November 10, 1998, a joint order of the probate and chancery courts was entered imposing sanctions on appellant and her counsel pursuant to Ark. R. Civ. P. 11, holding appellant and her counsel jointly and severally liable for a portion of appellees' attorney's fees totaling $13,472.

*Probate Case*

■ Probate court orders are reviewed de novo on appeal and are not reversed unless the probate court clearly erred. *Wells v. Estate of Wells*, 325 Ark. 16, 922 S.W.2d 715 (1996); *White v. Welsh*, 323 Ark. 479, 915 S.W.2d 274 (1996). A probate court order is clearly erroneous if it is clearly against the preponderance of the evidence. *In re Estate of Davidson*, 310 Ark. 639, 839 S.W.2d 214 (1992). A probate court's finding of fact is clearly erroneous when, although

there is evidence to support the fact found, the appellate court, on reviewing the entire evidence, is left with a definite and firm conviction that the probate court erred. *Balletti v. Muldoon,* 67 Ark. App. 25, 991 S.W.2d 633 (1999). We defer to the superior position of the probate judge to determine the credibility of witnesses and the weight to be accorded their testimony. *Wells v. Estate of Wells, supra.*

In a will-contest case, after the proponent of the will proves that it is rational on its face and has been executed and witnessed in accordance with testamentary formality, the party challenging the validity of the will is required to prove by a preponderance of the evidence that the will is invalid. *In re Estate of Davidson, supra.* In the case of a beneficiary of a will who procures the making of the will, a rebuttable presumption of undue influence arises, which places on the beneficiary the burden of going forward with evidence that would permit a rational fact-finder to conclude, beyond a reasonable doubt, that the will was not the product of insufficient mental capacity or undue influence. *Looney v. Estate of Wade,* 310 Ark. 708, 839 S.W.2d 531 (1992); *Edwards v. Vaught,* 284 Ark. 262, 681 S.W.2d 322 (1984); *Rose v. Dunn,* 284 Ark. 42, 679 S.W.2d 180 (1984). A beneficiary procures a will, thereby causing the rebuttable presumption of undue influence to arise, by actually drafting it for the testator. *See, e.g., Looney v. Estate of Wade, supra; Greenwood v. Wilson,* 267 Ark. 68, 588 S.W.2d 701 (1979). A beneficiary also procures a will, thereby causing the rebuttable presumption to arise, by planning the testator's will and causing him to execute it. *See Orr v. Love,* 225 Ark. 505, 283 S.W.2d 667 (1955). However, a beneficiary who is merely present when a will is drafted does not, by his presence, procure the will. *See, e.g., Abel v. Dickinson,* 250 Ark. 648, 467 S.W.2d 154 (1971); *Sullivant v. Sullivant,* 236 Ark. 95, 364 S.W.2d 665 (1963). Whether the beneficiary procured the making of a will is a threshold question that must be answered in the affirmative before the beneficiary must prove beyond a reasonable doubt that the testator enjoyed both required mental capacity and freedom of will. *See Rose v. Dunn, supra.* However, the burden of proof, in the sense of the necessity to prove lack of mental capacity or undue influence by a preponderance of the evidence, remains on the party challenging the will. *Id.*

■ The degree of undue influence that invalidates a will is well established. The Arkansas Supreme Court has described this degree of undue influence:

> It is not sufficient that the ... testator was influenced by the beneficiary in the ordinary affairs of life, or that he was in close touch and upon confidential terms with him; but there must be a malign influence resulting from fear, coercion, or any other cause which deprives the ... testator of his free agency in disposing of his property.

*Gross v. Young*, 242 Ark. 604, 611, 414 S.W.2d 624, 628 (1967) (quoting *Boggianna v. Anderson*, 78 Ark. 420, 94 S.W. 51 (1906)). *Accord In re Estate of Davidson, supra; Reddoch v. Blair*, 285 Ark. 446, 688 S.W.2d 286 (1985). In order to void a will, undue influence must be directed toward procuring a will in favor of particular parties. *In re Estate of Davidson, supra; Rose v. Dunn, supra.* However, a beneficiary of a will does not exercise undue influence over the testator merely because the beneficiary influenced him in the ordinary affairs of life or because the beneficiary was in a confidential relationship with the testator when he executed his will. *Reddoch v. Blair, supra; Rosenbaum v. Cahn*, 234 Ark. 290, 351 S.W.2d 857 (1961). In addition, a testator's decision to favor a person with whom he had developed a close and affectionate relationship is not, of itself, proof that the favored beneficiary procured the will by undue influence. *See Reddoch v. Blair, supra; Abel v. Dickinson, supra.*

In the November 1998 joint order, the probate court specifically found that the Cannons had not procured Mr. Moore's third will by the exercise of undue influence. In this order the probate court noted, "No one testified to any type of conversation, suggestions, intimidation or any other matter of pressure or coercion. There is no evidence of fear on the part of [Mr. Moore] or anyone which would have deprived him of his free will."

The lack of any undue influence on Mr. Moore exercised by the Cannons was established by the testimony of appellee Fox. Ms. Fox drafted not only the will at issue, but she had also drafted his previous two wills. Ms. Fox testified that on August 6, 1997, when Mr. Moore executed the will at issue in her office, she asked him if anyone was coercing him to make a new will and that Mr. Moore told her that he was not being coerced and that his decision to make a new will was a matter of his own free will. Ms. Fox audiotaped

Mr. Moore's execution of the will at issue, and a transcript of this tape was introduced into evidence as Defendant's Exhibit No. 1. Examination of this transcript shows that Ms. Fox asked Mr. Moore if the Cannons were forcing him to change his will and whether they had promised him anything and that Mr. Moore replied that the Cannons were not forcing him to change his will and that they had not promised him anything. Moreover, examination of this transcript shows that during the execution of his will Mr. Moore stated that he was doing so as a matter of his own free will. Mr. and Mrs. Cannon testified that they were not aware that Mr. Moore had made them the beneficiaries of the 1997 will until after he had done so. Appellant notes that on August 6, 1997, the Cannons drove Mr. Moore to Ms. Fox's law office; however, that they did so does not, of itself, prove that they exercised undue influence over Mr. Moore. *See Reddoch v. Blair, supra; Rose v. Dunn, supra.* Mr. Cannon testified that he drove Mr. Moore to Ms. Fox's law office because Mr. Moore asked him to do so. Moreover, both Mr. Cannon and Ms. Fox testified that the Cannons were not in the room when Mr. Moore executed the will at issue. In addition, Ms. Fox testified that in late July 1997 Mr. Moore appeared by himself at her law office and made an appointment to see her on August 6, 1997.

With regard to a testator's mental capacity to execute a will, if he has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom and upon what consideration, at the time the will is executed, then he possesses sufficient mental capacity to execute a will. *Rose v. Dunn, supra; Green v. Holland*, 9 Ark. App. 233, 657 S.W.2d 572 (1983). Evidence of the testator's mental condition, both before and after execution of the will at issue, is relevant to show his mental condition at the time he executed the will. *See Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997). A testator's old age, physical incapacity, and partial eclipse of mind will not invalidate a will if he has the requisite testamentary capacity when the will is executed. *Green v. Holland, supra.* A testator does not lack testamentary capacity merely because old age has impaired his mental faculties. *See Noland v. Noland, supra.*

In its August 1998 order, the probate court found that the appellees' proof of statements that Mr. Moore made when he executed his 1997 will, proved that, at that time, Mr. Moore had

sufficient mental capacity to make a valid will. In the November 1998 joint order, the probate court stated, "There is nothing before the court which would suggest the elements of mental capacity were not present when [Mr. Moore] executed his will on August 6, 1997." Proof of Mr. Moore's possession, on August 6, 1997, of the requisite mental capacity to make a valid will was provided by the testimony of appellee Fox. Ms. Fox testified that she would not have allowed Mr. Moore to execute the will if she felt that he were not competent to do so. Moreover, she testified that, on August 6, 1997, Mr. Moore seemed fully competent to her and that he was aware that he was disinheriting Hodges and was making the Cannons the sole beneficiaries of his will. Examination of the transcript of the audiotape of Mr. Moore's execution of his will on August 6, 1997, reveals that Mr. Moore stated that he wanted to make the Cannons the beneficiaries of his will and that he wanted to remove appellant as a beneficiary because she had moved out of his house and did not want to continue to provide care for him. Appellant notes that there was testimony that Mr. Moore's mental faculties were in decline by August 6, 1997. However, a testator's physical incapacity and partial eclipse of mind will not invalidate a will if the testator had the requisite testamentary capacity when he executed his will. *Green v. Holland, supra.* Appellee Fox's testimony established that Mr. Moore had the requisite testamentary capacity when he executed the 1997 will.

## Chancery Case

█ Appellant's contention that the chancery court erred in finding that she did not have an oral contract with Mr. Moore pursuant to which he would make her a beneficiary of his will is governed by the provisions of Ark. Code Ann. § 28-24-101(b)(1)(1987). Section 28-24-101(b)(1) states that a contract to make a will can be established (insofar as is pertinent to this case) only by a statement of the material provisions of the contract in a provision of the will or by an express reference to the contract in a will and extrinsic evidence proving the terms of the contract. The essential elements of a contract are: 1) competent parties; 2) subject matter; 3) legal consideration; 4) mutual agreement; and 5) mutual obligations. *Odom Antennas, Inc. v. Stevens,* 61 Ark. App. 182, 966 S.W.2d 279 (1998). A contract to make a will is valid when the evidence offered to establish the contract is clear, cogent, satisfac-

tory, and convincing. *Pickens v. Black*, 318 Ark. 474, 885 S.W.2d 872 (1994); *Apple v. Cooper*, 263 Ark. 467, 565 S.W.2d 436 (1978). This evidence must be so strong as to be substantially beyond a reasonable doubt. *Pickens v. Black, supra.* When a trial court's decision on the existence of a contract to make a will turns on the assessment of witness credibility, we defer to the trial judge's superior position to make this assessment. *Apple v. Cooper, supra; Purser v. Kerr*, 21 Ark. App. 233, 730 S.W.2d 917 (1987).

Although we try chancery cases de novo on the record, we do not reverse unless we determine that the chancery court's findings were clearly erroneous. Ark. R. Civ. P. 52(a); *Anderson v. Holliday*, 65 Ark. App. 165, 986 S.W.2d 116 (1999). A chancery court's finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Lammey v. Eckel*, 62 Ark. App. 208, 970 S.W.2d 307 (1998). In reviewing a chancery court's findings, we defer to the chancellor's superior position to determine the credibility of witnesses and the weight to be accorded their testimony. *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997).

The chancery court found that appellant introduced no evidence that would prove, pursuant to section 28-24-101(b)(1), that appellant had an oral contract with Mr. Moore whereby he would make her a beneficiary of his will in return for appellant's moving into his house and providing care for him. In the November 1998 joint order, the chancery court stated, "[The court] cannot find an enforceable oral contract between [Mr. Moore] and [appellant] was intended or that one ever existed." Appellant failed to satisfy the requirements of section 28-24-101(b)(1) because neither Mr. Moore's 1996 will, in which appellant was named beneficiary, nor the will at issue, contains a statement of the material provisions of a contract between Mr. Moore and appellant, and neither will contains an express reference to a contract between them. Several witnesses testified that Mr. Moore had named appellant as the beneficiary of the 1996 will because he was unhappy that appellant's mother, his late sister, had left appellant only $1,000 in her will. Appellant herself testified that she tried to explain to Mr. Moore the arrangements she had made with her mother regarding what her mother would leave her in her will, but that he did not believe appellant's mother had treated her fairly. Moreover, appel-

lant testified that Mr. Moore told her that he was going to make her a beneficiary of his will because she was the only relative that had kept in touch with him over the years and was the only one that was doing anything for him. It is true that appellant testified that after Mr. Moore made her the beneficiary of his will in October 1996, she agreed to keep house for him, cook his meals and take care of him, but appellant's testimony in this regard simply does not satisfy the requirements of section 28-24-101(b)(1). Thus, the chancellor's decision that there was no valid contract to make Hodges a beneficiary of Moore's will is not clearly erroneous.

*Sanctions*

Finally, appellant asserts that the probate court and the chancery court erred in granting the appellees' motion for sanctions, pursuant to Ark. R. Civ. P. 11, against her and her counsel. In the November 1998 joint order the courts awarded Fox and Mr. Moore's estate an attorney's fee of $6,736 and awarded appellees Lavern and Alliene Cannon an attorney's fee of the same amount. The courts ordered that appellant and her counsel were jointly and severally liable for the attorney's fee awards. We conclude that the courts erred in granting appellees' motion for sanctions pursuant to Rule 11.

Rule 11 states in pertinent part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of

the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The primary purpose of Rule 11 sanctions is to deter future litigation abuse and the award of attorney's fees is but one of several methods of achieving this goal. *See Crockett & Brown, P.A. v. Wilson*, 321 Ark. 150, 901 S.W.2d 826 (1995). When a trial court determines that a violation of Rule 11 has occurred, the Rule makes sanctions mandatory. *Id.* The moving party has the burden to prove a violation of Rule 11. *Bratton v. Gunn*, 300 Ark. 140, 777 S.W.2d 219 (1989). The imposition of sanctions pursuant to Rule 11 is a serious matter to be handled with circumspection, and the trial court's decision is due substantial deference. *Williams v. Martin*, 335 Ark. 163, 980 S.W.2d 248 (1998). We review a trial court's determination of whether a violation of Rule 11 occurred under an abuse-of-discretion standard. *Id.* In deciding an appropriate sanction, trial courts have broad discretion not only in determining whether sanctionable conduct has occurred, but also what an appropriate sanction should be. *Id.* When a trial court imposes a monetary award as a Rule 11 sanction, the trial court should explain the reason for the sanction so that a reviewing court may have a basis to determine whether the chosen sanction is appropriate. *Id.* The trial court should consider: 1) the reasonableness of the moving party's attorney's fees; 2) the minimum sanction necessary to deter the nonmoving party from future misconduct; 3) the ability of the nonmoving party to pay; and 4) factors relating to the severity of the nonmoving party's Rule 11 violation. *Id.*

Pursuant to Rule 11, an attorney signing a pleading, motion, or other paper on behalf of a party constitutes a certificate that: 1) the attorney made a reasonable inquiry into the facts surrounding the document or pleading; 2) the attorney made a reasonable inquiry into the law supporting that document to insure that it is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and 3) the attorney did not interpose the document for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation. *Id; Ward v. Dapper Dan Cleaners and Laundry, Inc.*, 309 Ark. 192, 828 S.W.2d 833 (1992).

Rule 11 is not intended to permit sanctions just because the trial court later decides that the attorney against whom sanc-

tions are sought was wrong. *Crockett & Brown, P.A. v. Wilson, supra.* In exercising its discretion under Rule 11, the trial court is expected to avoid using the wisdom of hindsight and should test the lawyer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. *Id.* The essential issue is whether the attorney who signed the pleading or other document fulfilled his or her duty of reasonable inquiry into the relevant law, and the indicia of reasonable inquiry into the law include the plausibility of the legal theory espoused in the pleading and the complexity of the issues raised. *Id.* The moving party establishes a violation of Rule 11 when it is patently clear that the nonmoving party's claim had no chance of success. *See Chlanda v. Killebrew,* 329 Ark. 39, 945 S.W.2d 940 (1997).

Although we have concluded that the probate judge's decision that Moore was competent to execute his will is not clearly against a preponderance of the evidence, we do not believe that there is a complete lack of evidence in the record to support appellant's contention that Moore lacked testamentary capacity or that appellees procured the will, and we are unable to say that Hodges' contest of Moore's 1997 will had "no chance of success."

For example, appellant's daughter, Rhonda Kolle, a certified nurses' aid specializing in geriatrics, testified that, during the three days preceding Moore's execution of his will, she stayed with Moore in his home and found it hard to carry on a conversation with him because he would "drift off" and not comprehend what was being said, that Moore thought she (Kolle) was her mother (appellant, Rita Hodges), that he could not remember things he had been told only a couple of hours earlier, and that he confused her present husband with her former one, even though he knew she had been through a "not very nice" divorce from her previous husband. Furthermore, there was evidence that Moore consumed large quantities of alcoholic beverages during the brief period Kolle stayed with him, while simultaneously administering morphine for pain caused by his physical condition.

Also, even though we have held that the judge's decision that the appellees did not procure or unduly influence Moore in the making of his will is not clearly erroneous, we cannot say that the record is void of any evidence that supports that position, or that Hodges had no chance to succeed. After all, there was testimony

that appellees drove Moore to the lawyer's office where the will was made, and that one of the appellees stayed at the lawyer's office while the will was being prepared and executed. This evidence, when coupled with Kolle's testimony about Moore's frail physical condition and confused mental state during the days that immediately preceded the will's execution, gives rise, at least, to cause for reasonable suspicion that the appellees may have exerted some influence over Moore in the preparation and execution of his will, especially in light of the fact that the appellees, although bearing no blood relationship to Moore and, therefore, not natural objects of his bounty, were named the sole beneficiaries of his substantial estate.

■ To avoid sanctions under Rule 11, a lawyer is required to make reasonable inquiry to determine that the allegations of a pleading are well grounded in fact and warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. The practice of law is not an exact science and a lawyer is not required, under Rule 11, to anticipate with precision how the evidence will be perceived or whose credibility will be given the most weight by the trier of fact. Mere negligence in the discovery of evidence, inadequate preparation for trial, strategic errors in the presentation and miscalculations of the effect of evidence, or failure to accurately predict the result of a trial, do not give rise to the imposition of sanctions under Rule 11 in the absence of a showing that pleadings in the case were interposed for an improper purpose, "such as to harass, or to cause unnecessary delay or needless increase in the cost of litigation." Ark. R. Civ. P. 11.

■ We do agree that Hodges's counsel should have known that, in view of the requirements of Ark. Code Ann. § 28-24-101(b)(1), Hodges could not prevail on her complaint in chancery court seeking to establish the existence of a contract to make a will. However, since the probate and chancery court cases were consolidated for purpose of trial, and since it is likely that the trial would have taken place even had the claim of an oral contract not been included, it does not appear to us that the length of the trial or the amount of appellees' attorney's fees would have been significantly affected had the oral contract claim not been made by Hodges. Consequently, we reverse and dismiss the Rule 11 sanctions against appellant and her counsel.

■ Appellees have also filed a motion for costs and attorney fees arising out of this appeal, alleging that they were required to provide supplemental abstracting of pleadings and orders to which appellant "referenced" in her abstract, but failed to include "the basis" of such pleading or order. Arkansas Supreme Court Rule 4-2 (a)(6) provides that an appellant's abstract need only include "such material parts of the pleadings, proceedings, facts, documents, and other matters in the record as are necessary to an understanding of all questions presented to the Court for decision." Likewise, Arkansas Rule of Appellate Procedure—Civil 6(c), provides that "[a]ll matters not essential to the decision of the questions presented by the appeal shall be omitted." We have carefully examined appellant's abstract and do not find that the pleadings and orders are so abridged as to preclude our understanding of the issues presented for appeal. Although appellant's abstract significantly abbreviates the pleadings and orders in the case, it appears to us that she has merely excised matters not pertinent to the issues on appeal, as required by the rules. Appellees' motion does not refer us to any particular pleading or order that they deem to be insufficiently abstracted, and our review did not reveal any. Furthermore, appellees' supplemental abstract appears to include portions of the record that are not essential to our understanding of the issues. Therefore, appellees' motion for attorney fees relating to this appeal is denied.

Affirmed in part and reversed and dismissed in part.

STROUD and NEAL, JJ., agree.