J.C. HARRISON, Jr. *v.* J.D. LOYD, Faber Mullins,
Trustees of Mount Vernon Church of Christ

CA 03-1377 192 S.W.3d 257

Court of Appeals of Arkansas
Division III
Opinion delivered September 22, 2004

[Rehearing denied November 3, 2004.]

*James F. Lane, P.A.*, for appellant.

*Robert W. Henry, P.A.*, for appellees.

SAM BIRD, Judge. J. C. Harrison Jr. appeals an August 21, 2003, decision of the Faulkner County Circuit Court that denied his claim to a reversionary interest in certain real estate. After considering the pleadings and briefs of the parties, the trial court rejected appellant's prayer that the quiet-title portion of an October 22, 1965, decree of the Faulkner County Chancery Court be declared void and subject to collateral attack.

Appellant raises three points, contending that the trial court erred (1) in finding that appellant's father, J. C. Harrison Sr., conveyed his interest in the land to predecessors in interest of appellees, the trustees of the Mount Vernon Church of Christ, by means of a January 10, 1957, deed; (2) in ruling that a 1965 decree was res judicata to the issues appellant presented in the 2003 proceeding; and (3) in sanctioning appellant under Rule 11 of Arkansas Rules of Civil Procedure by assessing attorney's fees and expenses against him. Appellees assert that the trial court did not err regarding these three points, and they also request that attorney's fees and expenses be levied against appellant as appropriate sanctions for pursuing this appeal. We affirm appellant's first and second points on appeal. We reverse the trial court's assessment of attorney's fees and expenses against appellant, and we do not assess sanctions against him for appealing the trial court's decision to this court.

The facts of this case are as follows. Appellant is an heir at law of J. C. Harrison Sr., who died in 1994. A warranty deed of December 6, 1946, executed by Harrison Sr. and Violet Harrison, his wife, purported to convey unimproved land to the Church of Christ of Mount Vernon, Arkansas, with the following provision: "The above property is to revert back to J. C. and Violet Harrison or their heirs in the event the said Church of Christ is disbanded or has no further use of the said property." Although the deed was never recorded, a church building was constructed on the land described in the deed shortly after it was executed. The congregation met there for a number of years.

On January 10, 1957, Harrison Sr., by then a widower, executed a warranty deed for a parcel of land that included the

parcel described in the 1946 deed. The grantors and grantees named in the deed were identical: D.C. Beene, S. K. Riggins, Dewey Mason, J. C. Harrison Sr., and Cletus Heffington, who are identified as Trustees for Mt. Vernon Church of Christ. Only "J. C. Harrison Sr., Widower" is typed in a space at the top of the deed form where the grantor is normally identified; the singular pronoun "I" is used twice in referring to the grantor in the habendum clause; the signature at the bottom is that of J. C. Harrison Sr. alone; and the deed is acknowledged solely by J. C. Harrison Sr., who is not identified in the acknowledgment as a trustee of the church. The deed was recorded in Faulkner County.

On August 16, 1963, Harrison Sr. executed a deed whereby he, as grantor, purported to convey to himself and other persons as trustees of the church the same lands described in the 1957 deed. This deed, which contained certain restrictions not pertinent to this appeal, was also recorded.

On August 16, 1965, Harrison Sr. filed a complaint against trustee Randall Leach, asking that Leach be ordered to deliver the 1947 deed for filing of record or, alternatively, return it to Harrison Sr.[1] The complaint stated that after the execution of the unrecorded 1947 deed, Harrison Sr. had executed and delivered to the Church of Christ a different deed bearing only his name; that "the second deed [executed in 1957] ... conveys the meaning and intent of the grantor and grantee"; but that, for reasons of sentiment, Harrison Sr. wished to have the first deed recorded in order to show that his wife had participated in the first deed and in a gift to the church. An answer filed by Leach and other persons, claiming to constitute a majority of the board of trustees of the Mt. Vernon Church of Christ, asked that Harrison Sr. be enjoined from recording the 1947 deed unless the reversionary clause were stricken, and that title to the lands described in the 1957 deed be confirmed and quieted in the trustees and their successors in office.

On October 22, 1965, the Faulkner County Chancery Court entered a consent decree that concluded Harrison Sr.'s suit.

---

[1] Harrison Sr. is identified in the complaint as Cecil Harrison.

Appellant notes that although the date of the first deed is December 6, 1947, its date of notarization is December 6, 1946. He states his belief that it was executed in 1946. In the briefs before us, both parties refer to the 1946 deed. The 1965 complaint and resulting 1965 consent decree identify the first deed as a 1947 deed, but the order from which the present appeal is taken calls it a 1946 deed.

The decree stated that the first deed conveying land to the Church of Christ of Mount Vernon was executed by Harrison Sr. (Cecil) and his wife, that it contained a reversionary clause, that the deed "was executed without monetary consideration to grantors but . . . in consideration of other donations by other persons" to help build a church on the lot described in the deed, and that the deed had never been recorded. The decree also addressed the 1957 deed:

> On January ___, 1957, the said J. C. Harrison, Sr. executed a deed, which is of record in Book 140, Page 341, Deed records of Faulkner County, Arkansas, by which he conveyed to the trustees of said Church of Christ of Mt. Vernon for a valuable consideration, a parcel of land, including said parcel conveyed on December 6, 1947, and other lands in Faulkner County, Arkansas, to-wit:

>> Beginning at the southeast corner of Lot Numbered Nineteen (19), in Block Numbered Three (3) of the town of Mount Vernon, Arkansas, and running west 206 feet; thence running north 70 feet; thence running east 206 feet; thence running south 70 feet to the point of beginning,

> in which there were no restrictions or reversions.

The chancery court further ordered that the land at issue be confirmed and quieted:

> in Randall Leach, J. D. Loyd, D. G. Beene, Faber Mullins, S. K. Riggins, J. C. Harrison, Sr., J. C. Harrison, Jr., Cletus Heffington, and Dewey Mason, as trustees for the Church of Christ of Mt. Vernon, Arkansas, free from any and all restrictions and from any possibility of said parcel of land, or any part thereof, reverting to the plaintiff, his heirs or assigns, in case the said Church of Christ of Mt. Vernon should disband or cease to use said property for church purposes.

Additionally, the court ordered that the trustees return to Harrison Sr. the unrecorded 1947 deed, which contained the reversionary clause, so that he might have it recorded if he so desired.

In 2002 appellant, J. C. Harrison Jr., filed a complaint for declaratory judgment against the trustees of the church seeking a declaration of the rights of the parties in and to the real property that had been the subject of the Faulkner County Chancery Court's October 22, 1965, consent decree. He attached to his complaint the 1946 deed, which was referred to as Deed #1; the 1957 deed, referred to as Deed #2; and the file of the 1965

chancery case. In his complaint appellant asked that the quiet-title portion of the 1965 decree be declared void and subject to collateral attack because of an alleged legal defect:

> Defendant Leach knew that Plaintiff herein, J.C. Harrison, Jr., had an interest in the subject land as a remainderman under Deed #1. Ark. Stat. Ann. §§ 34-1902 and 1903 required that Plaintiff herein, J.C. Harrison, Jr., be named as a counter defendant in the quiet title counterclaim. Further, Ark. Stat. Ann. § 34-1905 required the publication of notice of the quiet title claim in a newspaper having a circulation in Faulkner County, Arkansas. There was no such notice issued by the Chancery Clerk and, consequently, no publication.

Appellant also asked for a declaration that he, as an heir at law of Harrison Sr. and Violet Harrison, was a remainderman under the unfiled Deed #1; that the church trustees were bound by the reversion provision of Deed #1; and that Deed #2 was ineffective as a transfer of the property because Harrison Sr. executed it in his capacity as a trustee of the church and not in his individual capacity.

Appellees responded that appellant's assertions regarding Deeds #1 and #2 had been fully litigated in the 1965 case, and that his claims were barred by res judicata. Appellees denied that appellant had standing as an heir or in any other manner to maintain his cause of action, and denied that the grantors in Deed #2 were the trustees. They affirmatively asserted that no possible defect in the pleadings could be raised regarding the 1965 case because Harrison Sr., the sole plaintiff therein, was the only party who could object; and that having so failed, Harrison Sr. and all those who claimed by, through, or under him were bound by the court's decree. They asserted that all necessary and proper parties were before the court in the 1965 case, that the decree could not be collaterally attacked, and that the decree was a final and complete disposition of all matters involving those parties. They asserted that Deed #1 was void because the Church of Christ of Mt. Vernon was not incorporated at the time the deed was executed, resulting in no grantee capable of taking and holding title. Finally, appellees alleged that the 1957 deed was an unlimited conveyance of all the interest that Harrison Sr. had in the lands described therein, including any reversionary interest he may have retained in Deed #1 if it were valid, which validity appellees denied. Appellees asserted in a motion for sanctions that the appellant had filed a frivolous lawsuit.

In the 2003 decree of the Faulkner County Circuit Court, the order under our review, the trial court made the following findings: (a) that appellant's purported reversionary interest in the land at issue was claimed through the 1946 deed, the grantee was an unincorporated religious association, and the deed was not delivered to or accepted by the named trustees of the grantee; (b) that the 1957 deed was accepted and recorded by the grantees, who were the named trustees of the church; (c) that in the agreed decree of 1965, the chancery court determined that the 1946 deed was void for lack of monetary consideration to the grantors and because, the Church of Christ of Mt. Vernon not being a valid corporation, there was no grantee capable of taking title under that deed.

In the 1965 decree, title to the lands was confirmed and quieted in the then trustees of the church, free from any and all restrictions and free from any possibility of reversion to Harrison Sr., his heirs, and assigns. Noting the previous ruling of the chancery court that appellant's predecessor in title had no title to the lands, the circuit court ruled that appellant was barred by res judicata from retrying the same lawsuit in a later proceeding. The circuit court assessed $3741.32 against appellant for attorney's fees and expenses incurred by appellees in defending against "a frivolous cause."

## 1. The 1957 Deed

■ Appellant contends in his first point of appeal that the trial court erred in finding that his father, J. C. Harrison Sr., conveyed his interest in the real property to predecessors in interest of appellees by means of the deed of January 10, 1957. As a general rule, the requisites of a valid deed are that there be competent, identifiable parties and subject matter; a valid consideration; effective words expressing the fact of transfer or grant; and formal execution and delivery. *White v. Zini*, 39 Ark. App. 83, 838 S.W.2d 370 (1992).

Appellant concedes that the 1946 deed is void for want of a capable grantee because the Church of Christ of Mount Vernon did not formally exist at that time. He characterizes the 1957 deed as "an obvious attempt to convey the realty from J. C. Harrison, Sr." to the trustees of the church. However, noting that the grantor and grantee are the same parties, he argues that the 1957 deed's legal defect of conveying land from and to identical parties

renders the deed of no force or effect. He further contends that the 1957 deed conveyed nothing because only Harrison Sr.'s interest as a church trustee was conveyed and because the church, by and through its trustees, did not have any property to convey under the 1946 deed. We do not agree with these arguments.

In *Bishop v. City of Fayetteville*, 81 Ark. App. 1, 97 S.W.3d 913 (2003), we related the well-settled rules that must be followed in cases involving the construction of a deed:

> When interpreting a deed, the court gives primary consideration to the intent of the grantor. *Winningham v. Harris*, 64 Ark.App. 239, 981 S.W.2d 540 (1998). When the court is called upon to construe a deed, it will examine the deed from its four corners for the purpose of ascertaining that intent from the language employed. *Id.* The court will not resort to rules of construction when a deed is clear and contains no ambiguities, but only when the language of the deed is ambiguous, uncertain, or doubtful. *Id.* When a deed is ambiguous, the court must put itself as nearly as possible in the position of the parties to the deed, particularly the grantor, and interpret the language in the light of attendant circumstances. *Id.*
>
> It is only in case of an ambiguity that a deed is construed most strongly against the party who prepared it, *see Gibson v. Pickett*, 256 Ark. 1035, 512 S.W.2d 532 (1974), or against the grantor. *Goodwin v. Lofton*, 10 Ark.App. 205, 662 S.W.2d 215 (1984). Even then, the rule is one of last resort to be applied only when all other rules for construing an ambiguous deed fail to lead to a satisfactory clarification of the instrument and is particularly subservient to the paramount rule that the intention of the parties must be given effect, insofar as it may be ascertained, and to the rule that every part of a deed should be harmonized and reconciled so that all may stand together and none be rejected. *Gibson v. Pickett, supra.* In arriving at the intention of the parties, the courts may consider and accord considerable weight to the construction of an ambiguous deed by the parties themselves, evidenced by subsequent statements, acts, and conduct. *Wynn v. Sklar & Phillips Oil Co.*, 254 Ark. 332, 493 S.W.2d 439 (1973). Courts may also acquaint themselves with and consider circumstances existing at the time of the execution of a contract and the situation of the parties who made it. *Id.*

*Bishop*, 81 Ark. App. at 8-9, 97 S.W.3d at 918-19 (2003).

In the case we now review, an ambiguity exists in the 1957 deed because identical parties are typed on the deed form as both grantors and grantees. An examination of the four corners of the

deed, however, enables us to determine the intent of the parties from the language employed. Only the name J. C. Harrison, Sr. is typed in the space at the top where the grantor's name typically appears; the singular pronoun "I" is typed in twice as the grantor in the habendum clause; the sole signature at the bottom of the deed is that of J. C. Harrison Sr.; and the deed is acknowledged only by Harrison Sr., and not in his capacity as a trustee.

■ It is clear to us that the listing of identical names as both grantors and grantees is merely a scrivener's error, and on this basis alone we would not hesitate to find that Harrison Sr. as an individual, not acting as a trustee of the church, was the grantor. Additionally, however, there is other evidence that Harrison Sr. was the grantor in the 1957 deed. Harrison Sr. agreed to convey a tract of land as his pledge to the new church and he executed the 1946 deed. That deed failed because there was no proper grantee or monetary consideration and because the church did not accept it due to the reversionary clause. The 1957 deed was signed by Harrison Sr., and it was acknowledged and delivered to the church trustees. Harrison Sr. stated in his 1965 complaint that the second deed "conveyed the meaning and intent of the grantor and the grantee." From this evidence, we find that the intention of Harrison Sr. was to convey the realty to the trustees of the church, and that the 1957 deed was a valid conveyance of the lands therein described. Thus, we hold that the circuit judge did not clearly err in finding that appellant's father, Harrison Sr., conveyed his interest in the land to predecessors in interest of appellees, the trustees of the Mount Vernon Church of Christ, by means of the January 10, 1957, deed.

## 2. *The 1965 Decree as Res Judicata*

The trial court ruled that because the 1965 consent decree had decreed that appellant's predecessor in title had no title to the subject lands, appellant was barred by res judicata from retrying the same lawsuit in a later proceeding. The trial court then ordered:

> It is accordingly considered, ordered, adjudged and decreed that the 1946 deed above referred to was void because there was no consideration to the Grantors for the same and there was no legal entity named as grantee therein which was capable of holding title thereto: that as the result thereof that 1946 deed was void and is a nullity, that the Plaintiff herein has no reversionary interest in the

lands described in the 1946 deed pursuant to the 1946 deed or any other conveyance; that the Defendants' plea of res judicata is proper and the Plaintiff is barred from again trying the issues tried by his predecessor in title in the said 1965 Chancery Court decree.

Appellant argues that res judicata, or claim preclusion, does not apply in this case because in the 1965 suit the trial court and parties did not comply with the statutory quiet-title procedures, such as by naming in the quiet-title petition any person known to claim an interest in the land and by publishing notice of the petition. Appellant contends that because these required procedures were not followed, the 1965 quiet-title decree was void and is subject to his collateral attack in the present suit. Appellees respond that all persons who were required to be notified of the 1965 suit and who had an interest in the land were before the court in that action, and that appellant cannot collaterally attack the decree. We agree.

■■ Four elements must exist for res judicata to apply: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same cause of action or claim; (4) both suits involve the same parties or their privies. *Crockett & Brown, P.A. v. Wilson,* 314 Ark. 578, 864 S.W.2d 244 (1993). Res judicata bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated. *Searcy v. Davenport,* 352 Ark. 307, 100 S.W.3d 711 (2003). Thus, where a lawsuit is based on the same events as the subject matter of the previous lawsuit, res judicata will apply even if the subsequent lawsuit raised new legal issues and seeks additional remedies. *Id.*

■ We hold that because the 1946 deed was void, appellant had no reversionary interest in the property under that deed. Appellant's only possible interest in the land would have been that of a statutory heir of his father, Harrison Sr., who in 1957 deeded away all his interest in the land and retained no reversionary interest. Because Harrison Sr. was still alive in 1965, appellant was not an heir and had no interest in Harrison Sr.'s land that would have entitled appellant to notice of the 1965 quiet-title action. Thus, appellant's current claims are barred under the doctrine of res judicata. *See Bentrup v. Hoke,* 245 Ark. 572, 433 S.W.2d 139 (1968) (homeowner was precluded by res judicata from operating a beauty parlor in her home because her predecessors in title had previously litigated the issue).

■ Appellant admits that if the 1957 deed was valid, appellees could have instituted the quiet-title action under common law, as the party in possession holding legal title, and they would not have had to comply with the statutory quiet title procedures. *See Driver v. Driver*, 223 Ark. 15, 263 S.W.2d 914 (1954) (equity jurisdiction to quiet title, independent of statute, can be invoked only by a plaintiff in possession holding the legal title, the remedy at law being otherwise adequate). We hold that because the current action involves the same subject matter as the 1965 suit, because the same parties or their privies are involved, and because the 1965 decree was a final judgment based upon proper jurisdiction, appellant's claims in the current suit are barred by res judicata. We affirm the trial court's ruling that appellant was barred by res judicata from retrying the same issues previously tried.

### 3. *Assessment of Sanctions*

Appellees' motion for sanctions at the trial level asserted that appellant knowingly, maliciously and wrongfully, and for the purpose of harassing appellees, caused his attorney to file a frivolous complaint to re-litigate the precise findings and orders in the 1965 chancery case when appellant "knew or should have known his purported cause of action was without just cause and without hope of success." The trial court granted the motion, awarding appellees attorney's fees and expenses in the sum of $3741.32. We reverse the awarding of sanctions.

Rule 11 of Arkansas Rules of Civil Procedure (2004) reads in pertinent part:

> (a) Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name. . . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both,

an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

 ██ The primary purpose of Rule 11 sanctions is to deter future-litigation abuse. *Hodges v. Cannon*, 68 Ark. App. 170, 5 S.W.3d 89 (1999), citing *Crockett & Brown, P.A. v. Wilson*, 321 Ark. 150, 901 S.W.2d 826 (1995). By signing a pleading, motion or other paper, a party or attorney warrants that to the best of his knowledge, information and belief, formed after a reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as harassment or unnecessary delay. *State v. Craighead Co. Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989). The party asking for Rule 11 sanctions has the burden of proving a violation of the rule. *Id.*

 The imposition of sanctions pursuant to Rule 11 is a serious matter to be handled with circumspection, and the trial court's decision is due substantial deference. *Hodges v. Cannon, supra*, citing *Williams v. Martin*, 335 Ark. 163, 980 S.W.2d 248 (1998). We review a trial court's determination of whether a violation of Rule 11 occurred under an abuse-of-discretion standard. *Id.* In deciding an appropriate sanction, trial courts have broad discretion in determining whether sanctionable conduct has occurred and what an appropriate sanction should be. *Id.*

 The practice of law is not an exact science: Rule 11 does not require a lawyer to anticipate with precision how the evidence will be perceived, nor is it intended to permit sanctions just because the trial court later decides that the attorney against whom sanctions are sought was wrong. *Hodges v. Cannon, supra*, citing *Crockett & Brown, P.A. v. Wilson, supra*. In exercising its discretion under Rule 11, the trial court is expected to avoid using the wisdom of hindsight and should test the lawyer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. *Id.* The essential issue is whether the attorney who signed the pleading or other document fulfilled his or her duty of reasonable inquiry into the relevant law, and the indicia of reasonable inquiry into the law include the

plausibility of the legal theory espoused in the pleading and the complexity of the issues raised. *Id.*

 We do not agree with appellees' characterization of this case as frivolous. We do not agree that the issues presented by this litigation are so simple that the result could be or should have been readily ascertainable by appellant's counsel when the complaint was filed. Although the trial judge ultimately ruled in appellees' favor, the answers to the factual and legal issues presented for the court's consideration were not foregone conclusions without thorough examination. While our decision upholds the trial court's findings that appellant's father conveyed interest in the land by means of the 1957 deed and that the 1965 decree was res judicata to the issues appellant presented in the 2003 proceeding, we found these issues to be complex, and they have required much examination on our part. Therefore, we hold that sanctions were not justified at the trial level, nor are they called for on appeal. We reverse the sanctions assessed against appellant, and we remand to the trial court for entry of an order in keeping with our holding.

Affirmed in part; reversed and remanded in part.

CRABTREE, J., agrees.

ROAF, J., concurs.